**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CHRISTOPHER EVANS, | : | |
| | : | Civil Action No. 15-2132 (SDW) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| STEPHEN D'ILIO, et al. | : | |
| | : | |
| Respondents. | : | |
| | : | |

**WIGENTON**, District Judge:

Presently before the Court is the petition for a writ of habeas corpus of Christopher Evans ("Petitioner") brought pursuant to 28 U.S.C. § 2254 challenging Petitioner's state court conviction (ECF No. 1).   Following an extension, the State has filed a response to the petition (ECF No. 6), to which Petitioner replied (ECF No. 16).   For the following reasons, this Court will deny the petition and deny Petitioner a certificate of appealability.

## I.   BACKGROUND

In its opinion affirming Petitioner's conviction, the Superior Court of New Jersey – Appellate Division offered the following summary of the basic facts underlying this case:

> [This] case involved the fatal shooting of Sheldon Kelly on May 6, 2005, during an armed robbery of Kelly and three companions in the foyer of an apartment building in Irivington[, New Jersey].   A fourth companion fled from the foyer after the perpetrators arrived but before they began the robbery.   None of the robbers wore masks, and all of the victims saw their faces at close quarters.
>
> The three robbers stole several cell phones, money, and other personal items.   After they completed the robbery, to which the

victims offered no resistance, one of the robbers shot Kelly. [Petitioner] became a suspect in the crime when the police traced calls made from one of the stolen cell phones to a telephone number on which the service provider listed [Petitioner] as a user.

Once they suspected that [Petitioner] might have some knowledge about or involvement in the crime, detectives showed the three robbery victims a photo array that included [Petitioner]'s photograph.   They each identified [Petitioner] as being one of the three intruders who entered the foyer and robbed them.   [Petitioner] was then arrested in Newark.   He waived his [*Miranda v. Arizona*, 384 U.S. 218 (1967),] rights and confessed to participating in the robbery, although he denied any part in the shooting.   At his trial, the State conceded that [Petitioner] was not the shooter, although the State contended that [Petitioner] was guilty of felony murder based on his participation in the armed robbery that resulted in the shooting.   At the trial, the four surviving victims, including the one who fled after getting a look at the robbers, all identified [Petitioner] as one of the perpetrators.

*State v. Evans*, 2011 WL 2496243, at *1-2 (N.J. App. Div. June 24, 2011), *certif. denied*, 208

N.J. 601 (2011).

Prior to trial, Petitioner sought to suppress the identifications made by the various

victims.   *Id.* at *2.   Petitioner's attempts to do so proceeded as follows:

At a pre-trial hearing on February 21, 2007, counsel and the trial judge discussed on the record the possible need for a testimonial [*United States v. Wade*, 388 U.S. 218 (1967),] hearing.   Defense counsel raised one issue, relat[ed] to the fact that the surviving victims were shown photo arrays on more than one occasion.   In May 2005, shortly after the shooting, the Irvington police showed the victims a photo array and none of the victims were able to identify anyone in the photographs.   Several months later, they were shown another array that included [Petitioner]'s photo, and they identified him.   Defense counsel argued that, if the May array included [Petitioner]'s picture, the victims may have identified him during the later session only because his picture looked vaguely familiar from the first session and not because they actually remembered him from the night of the robbery.

2

In response, the prosecutor represented to the court that the first array did not include [Petitioner]'s photograph, because it only included suspects who had previously been arrested in Irvington, a category that did not include [Petitioner]. The prosecutor offered to produce a police witness who could confirm that information. Defense counsel agreed that such testimony could resolve the issue he had raised.[1] The judge then stated, "All right. So with the exception of that particular witness limited to that topic which we'll do tomorrow, the *Wade* issue is done." The court later clarified that the purpose of the next day's limited hearing was to determine if there was a need for a more extensive testimonial *Wade* hearing.

At the limited testimonial *Wade* hearing on February 22, 2007,[] Detective Christopher Smith, of the Essex County Prosecutor's Office, confirmed that the day after the May 6 shooting, the victims viewed photo arrays at the Irvington Police Department and did not identify anyone in the photographs. According to Smith, the Irvington photo database was "an in-house system" of individuals arrested by the Irvington police. He testified that [Petitioner] had never been arrested in Irvington and therefore his photograph was not in the Irvington database in May 2005.

Smith also testified that a week later, the victims came to the Essex County Prosecutor's Office to view additional photos from the Prosecutor's database, which included persons arrested in Newark. Again, they made no identifications. Based on his research of the Prosecutor's database, Smith determined that [Petitioner]'s photo was not yet in the database during that second photo viewing. Smith testified that the first time [Petitioner]'s photograph was entered into the Essex database was May 28, 2005 (approximately two weeks after the second photo viewing), when he was arrested for a drug offense in Newark. Smith also authenticated [Petitioner]'s arrest record, which showed later arrests in Newark, but no Newark arrests prior to May 28, 2005.

After Smith testified, the judge invited argument "on why there should be a *Wade* hearing." The prosecutor argued briefly that there was "no showing of any suggestibility" in the procedure the police used. Defense counsel did not argue the need for a *Wade* hearing. He explained that when he first received the reports, they raised a question as to whether witnesses had previously seen

---

[1] The Appellate Division noted that it ultimately became clear that there had been three viewing sessions rather than two involved in the identification process. *Id.* at *2.

3

[Petitioner]'s photograph.   He then stated, "With that I'll submit
Judge."   The judge ruled

> Whether or not I'm to interpret that as a
> withdrawal of the request for a *Wade* Hearing[,]
> suffice it to say that [Petitioner] has not [met] his
> threshold burden of providing or proffering evidence
> of impermissible suggestiveness to require the
> necessity of the testimonial *Wade* hearing in order to
> determine whether or not there was a substantial
> likelihood of misidentification arising [from] the out
> of Court identification procedures.

*Id.* at *2-3.   Although Petitioner did not raise the issue before the trial court, Petitioner later

claimed on direct appeal that the identification procedures were suggestive because police had

not followed the New Jersey Attorney General's guidelines in conducting the photo arrays.   *Id.*

at *3-4.   The Appellate Division, however, rejected that argument on the basis of the fact that

the guidelines were not themselves a source of substantive rights and because, regardless of the

fact that they impugned the guidelines, the trial record did not suggest that the procedures were

unduly suggestive.   *Id.* at *4.

Petitioner then proceeded to trial where the jury heard both the identification testimony of

the various surviving victims and Petitioner's own confession.   Following the trial, the jury

convicted Petitioner on "four counts of first-degree robbery [in violation of N.J. Stat. Ann. §]

2C:15-1[] and one count of conspiracy to commit robbery, [in violation of N.J. Stat. Ann. §]

2C:5-2, 2C:14-1."   *Id.* at *1.   The jury, however, acquitted Petitioner of both felony murder and

two weapons offenses.   *Id.*   Petitioner received an aggregate sentence of thirty years

imprisonment for these charges, including an eighteen year sentence for one of the robbery

charges, a second twelve year sentence on one of the other robbery charges to run consecutive to

the first based on petitioner's numerous victims, and concurrent sentences on the remaining

charges, all of which were subject to an eighty-five percent parole disqualifier under the No

Early Release Act, N.J. Stat. Ann. § 2C:43-7.2   *Id.*at *1, *7.

Petitioner appealed his conviction and sentence.   On June 24, 2011, the Appellate

Division affirmed Petitioner's sentence finding that the identification procedures used at trial

were not unduly suggestive, that the erroneous admission of certain telephone records under the

business record exception to the hearsay rules was harmless beyond a reasonable doubt

regardless of whether the records were testimonial hearsay under *Crawford v. Washington*, 541

U.S. 36 (2004), that the destruction of the police officer's notes prior to trial did not run afoul of

state rules as the case requiring their preservation had not yet come into effect at that time and

that counsel had sufficiently cross-examined the officer on that issue, that Petitioner's sentence

was appropriate, and that Petitioner's cumulative error claim was without merit.   *Id.* at *1-7.

Petitioner thereafter filed a petition for certification, which the New Jersey Supreme Court

denied on December 8, 2011.   208 N.J. 601.

Petitioner filed a petition for post-conviction relief approximately a month later in

January 2012 in which he raised, *inter alia*, various claims of ineffective assistance of counsel.

(ECF No. 1 at 4).   The PCR court denied that petition by way of a written opinion on December

3, 2012.   (*Id.* at 41-57).   Petitioner appealed, and the Appellate Division affirmed the denial of

his PCR petition on May 15, 2014.   *State v. Evans*, 2014 WL 1923412 (N.J. App. Div. May 15,

2014).   Petitioner again filed a petition for certification, which the New Jersey Supreme Court

denied on October 24, 2014.   220 N.J. 43 (2014).   Petitioner thereafter filed the instant habeas

petition on or about March 25, 2015.   (ECF No. 1).

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, --- U.S. ---, ---,132 S. Ct. 2148, 2151 (2012). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, --- U.S. ---, ---, 125 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to

afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B. Analysis**

Petitioner asserts that he received ineffective assistance of both trial and appellate counsel. The standard which governs such claims is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687*; see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.
>
> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the

wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015). In his petition, Petitioner

raises various ineffective assistance claims, each of which this Court will address in turn.

**a.   Petitioner's claim that counsel failed to consult with him**

In his first ineffective assistance claim, Petitioner asserts that trial counsel did not "adequately consult with [him] at the jail prior to trial."   Petitioner further states that he believes that this "failure" prevented counsel from developing a sound trial strategy and investigating all possible defenses.   Petitioner, however, fails to provide any factual support for this assertion. He makes no allegations as to what counsel might have discovered with more discussion with Petitioner, or what counsel failed to turn up in so failing.   Petitioner has thus provided no more than a bald assertion of ineffective assistance, and has provided no factual support to suggest that he suffered any prejudice as a result of this alleged failure.   Because Petitioner has failed to provide any factual information as to the prejudice suffered and has provided no more than a bald assertion of deficient performance, Petitioner's first claim is clearly without merit as Petitioner has shown neither deficient performance nor prejudice.   *See Palmer*, 592 F.3d at 395; *see also Brown v. United States*, No. 13-2552, 2016 WL 1732377, at *4-5 (D.N.J. May 2, 2016) (a claim that counsel failed to investigate requires a showing as to what information would have been produced and how that information would have changed the outcome of trial).

**b.   Petitioner's identification related claim**

Petitioner's chief contention is that trial counsel was ineffective regarding his request for a *Wade* hearing as to the out of court identifications by Petitioner's victims.   Essentially, Petitioner asserts that had counsel properly challenged the identifications, they would not have been admissible at trial.   A *Wade* hearing is not required in every case wherein a defendant challenges out of court identifications.   *See Watkins v. Sowders*, 449 U.S. 341, 349 (1981).   To

9

show that he was prejudiced by counsel's failure to seek a *Wade* hearing, a petitioner "must show that he would likely have prevailed on [his] suppression motion and that, having prevailed, there is a reasonable likelihood that he would not have been convicted."   *Thomas v. Varner*, 428 F.3d 491, 502 (3d Cir. 2005).

The Supreme Court set forth the standard which governs the admissibility of an out of court identification in *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977).   Pursuant to *Manson*, an identification procedure violates due process and the identification at issue is inadmissible where the procedure used was "unnecessarily suggestive and . . . create[d] a substantial risk of misidentification."   *United States v. Brownlee*, 454 F.3d 131, 137 (3d Cir. 2006); *see also United States v. Anthony*, 458 F. App'x 215, 218 (3d Cir. 2012).   Even where the procedure used was so suggestive, "reliability is the linchpin in determining the admissibility of identification testimony . . . The factors to be considered . . . include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.   Against these factors is to be weighed the corrupting effect of the suggestive identification itself."   *Anthony*, 458 F. App'x at 218 (quoting *Manson*, 432 U.S. at 114).

Here, Petitioner asserts that trial counsel should have raised the issue before the trial court that he raised on appeal and argued that the identifications at issue here were unduly suggestive because the procedures used violated the New Jersey Attorney General's guidelines for identifications insomuch as the lead detective in his case conducted some of the identifications in which the victims were unable to identify anyone, because the same officer

10

(who was not initially part of the investigation) conducted multiple identification procedures with multiple victims in which each identified Petitioner's photograph after being shown it as part of an array for the first time, and because the authorities did not keep a record of the colloquies which passed between the officers and the victims during the investigations. Initially, this Court must note that, as the Appellate Division observed, the Attorney General guidelines "specifically provide that failure to follow them does not constitute grounds to invalidate an identification, a point noted by the [New Jersey] Supreme Court." *Evans*, 2011 WL 2496243 at \*3; *see also State v. Delgado*, 188 N.J. 48, 61 n. 7 (2006). Thus, that the detectives did not follow the guidelines in and of itself is insufficient to show that Petitioner would have succeeded on his motion to suppress the identifications, Petitioner must still show that the procedures used were unduly suggestive and that the identifications lacked sufficient reliability to be admitted in any event.

Petitioner has failed to present sufficient evidence to suggest that the identifications in this case were unduly suggestive. While it is certainly not preferable for an involved officer to conduct an identification, the witnesses did not identify Petitioner, whose photograph was not present, during the photo arrays conducted by the detective in this case. The only array resulting in Petitioner's identification was the third conducted after Petitioner's arrest on drug charges, which was conducted by an uninvolved officer, albeit one who showed the array to multiple witnesses, all of whom identified Petitioner. That the same officer showed the photos to each witness, while not ideal, is insufficient to convince this Court that the identification in this case was unduly suggestive. Any suggestiveness that might result would go to the weight of the identification, not its admissibility. Likewise, that the conversation between the witnesses

11

and the officers was not preserved for the record might not be ideal nor perfect under the New Jersey guidelines, but, without more information which would suggest some underhanded or suggestive activity by the officers, the lack of a record of what passed between the witnesses and the officers is not sufficient to show that the procedures in this case were unduly suggestive. Indeed, although testimony on the issue was not fully developed at trial, the police witnesses actually testified that "they did preserve the photo arrays from which the witnesses identified [Petitioner], and they kept a record of what the witnesses said when they made the identifications."   As such, it appears that, contrary, to Petitioner's assertions, the police did, to some extent, keep a record of the exchange between officers and the victims during the identification procedures, and Petitioner has not shown that the record that was kept indicates that the identification was unduly suggestive.   Even when all of Petitioner's claims of suggestiveness are viewed together, Petitioner has thus presented no facts which would convince this Court that the identification in this case was unduly suggestive.

Even if Petitioner had been able to show that the procedures themselves were unduly suggestive, nothing in the record suggests that the identifications in this matter would not still have been admissible.   Looking to the *Manson* factors, the victims in this matter had a considerable ability to view Petitioner at the time of the crime, including his face as Petitioner and his co-conspirators had not covered their faces, and considering the fact that they were robbed at gun point, Petitioner and his fellow assailants certainly would have commanded the victim's attention.   Likewise, that Petitioner's co-conspirator then shot and killed one of the victims suggests that the incident would have been strongly imprinted in the minds of the victims.   The identification in this case took place only a few months after the shooting, and

12

despite being given two opportunities to do so within a few days and weeks of the shooting, the
victims did not misidentify another individual in Petitioner's place during the first two photo
arrays, each identifying Petitioner once his photo was presented in the third array.   The victims'
testimony at trial likewise indicated that each was certain of Petitioner's involvement.   Given
Petitioner's failure to show that the procedures used here were unduly suggestive, it is clear from
these facts that the identifications were sufficiently reliable to be admitted at trial.   Thus,
Petitioner has failed to show that he likely would have succeeded on his suppression motion had
counsel raised these arguments, and thus has not shown that counsel was ineffective in failing to
make these claims.[2]   *Thomas*, 428 F.3d at 502.

Petitioner also asserts that trial counsel was ineffective in failing to raise certain
inconsistencies at trial and at the *Wade* hearing regarding two of the victims – Ragland and
Faubert.   Petitioner takes issue with Ragland testifying that he identified Petitioner's photo
twice even though the record and Petitioner both assert that he was only shown Petitioner's
picture during the third photo array, and Faubert's having initially claimed that Petitioner was the
one who shot his friend rather than one of the other robbers involved in this incident.   As to
Faubert, it is clear from the record that Faubert was cross-examined on this issue at length, and
Faubert was consistent throughout that Petitioner was one of his assailants, even if he was

---

[2]  This Court must also note that defense counsel extensively cross-examined the officers in this
case as to proper identifications procedures and the procedures used in this case, that counsel
emphasized the issues with the identifications during his summation and called the jury's
attention to the alleged procedural infirmities, and that the trial court gave the jury an
identification instruction.   Thus, it is doubtful that counsel can be said to have been deficient
with regard to the identification issue.

inconsistent as to whether Petitioner was the one who shot his friend.   (*See* Document 13 attached to ECF No. 6 at 34-37).

As to Ragland, Petitioner's assertions are inaccurate.   Ragland specifically testified on cross-examination that the first time he made an identification was when he was shown Petitioner's picture as one of several pictures.   (Document 12 attached to ECF No. 6 at 160-70). Although Ragland said that he saw others who looked similar to Petitioner and told police there were people who "looked like" the guy, he did not identify them in Petitioner's place.   In any event, counsel directly cross-examined Ragland on this issue at length and clearly brought it to the jury's attention.   (*Id.*).   Thus, to the extent that Petitioner asserts counsel should have brought the issue to the jury's attention outside of his motion to suppress, counsel did so, and Petitioner's claim on that basis must also fail.   To the extent that Petitioner asserts that counsel also should have raised Detective Smith's actions seeking to keep Petitioner as a suspect in this case in relation to the identification, Petitioner has failed to present any evidence to suggest this was improper in light of Petitioner's connection to one of the stolen cell phones and the identification of Petitioner by the victims, and as such counsel's failure to raise that "issue" is likewise not ineffective assistance of counsel.

In a related claim, Petitioner also asserts that the trial court erred in *sua sponte* failing to require a full *Wade* hearing after the procedural imperfections Petitioner raises above came to light.   As this Court explained above, the infirmities Petitioner raises are insufficient to show that the identification procedures used in this case were unduly suggestive.   As Petitioner had not made out even a prima facie showing of undue suggestiveness given the claim he did raise before the trial court was without merit as the witnesses had not been shown Petitioner's photo

on multiple occasions, and as Petitioner has failed to provide facts which would be sufficient to make out a threshold showing of undue suggestiveness after the fact, Petitioner has in turn failed to show that a fuller *Wade* hearing was necessary in this case, let alone that the trial court should have required one *sua sponte*.   Petitioner's claim that the trial court erred in not holding a fuller *Wade* hearing beyond the one requested by defense counsel is thus without merit and does not provide a basis for habeas relief.

### c.   Petitioner's prosecutorial misconduct related claim

Petitioner next asserts that counsel proved ineffective by failing to object to several comments made by the prosecutor during summation which Petitioner believes amounted to prosecutorial misconduct.   Petitioner specifically takes issue with counsel's failure to object to the following statements by the prosecutor in her summation:

> Now, one of the things you'll have to do is judge the credibility of the witnesses who were there [and] who came before you; [including the victims] Nicole Richardson, Kiana Basden, Jason Faubert and Isaiah Ragland.
>
> If in fact, each of these witnesses said in their statements that night to the police after what happened exactly the same thing, by clothing, by height, by weight, then I would submit you would say to yourself, you know what, that seems a little too coached.
>
> I asked the time period, the detective what time was the statement taken from these various people, because you have to, you know, we're sitting here two years later.   You have to imagine, first of all, keep in mind their age.   Now Nicole Richardson is 17 years old, they're all young basically late teenagers, young adults.   But the horror of what had occurred to them that night, Isaiah Ragland said it best on cross examination under questioning by [defense counsel].   My best friend was just murdered in front of me, you know, and his statement was at six in the morning.

15

So you keep that in mind, all right.  When they're giving descriptions, and consider [defense counsel] said well Kiana Basden was trying to [p]ull a fast one.  I submit to you that these witnesses were credible, and you judge credibility every day in your life, all right.  It's not some arcane thing, with your kids, with people you work with, you know if somebody is being up front with you.  Or they might have made a mistake, or they might have said an honest mistake.

Yesterday I think there was a different sheriff's officer sitting there than there is today.   If every one of us wrote down what the guy yesterday [looked like], how tall he was, how much he weighed, what his hair is like, probably [there would be] some differences.   Maybe somebody would say six feet, somebody would say five 11.   Does that mean if you said six feet and you said five 11 somebody's lying?  Oh, one said six feet, one said five 11.  You have to look at the material, the material that is significant, important descriptions that were given that night.   And they're consistent with all of these witnesses that night, given in the aftermath of this horror that had just occurred.   They're consistent with what happened.

[Counsel describes the scene before the crime, noting that Kelly, Basden, and Ragland were all in a hallway near some steps before Petitioner and his co-defendants arrived].

A few minutes later Nicole Richardson is leaving the building and a female enters.  Generally they're consistent, all of these witnesses later when they give their statements, the female has a trench coat on.  There's a North Face jacket by that individual, that first male.   And then the female comes in and two males come in.  They all describe the shooter [as] having a silver gun.  And that's the gun that's used.

They describe the other individual, the other male as having a black gun, and that's significant.  Because later on, you keep in mind, that was said that night.  Later on, you look at, you know, what was proven.  So when you judge the credibility of all of these witnesses, think about what they said that night and whether they were consistent in the material aspects, the important aspects, because you're going to have differences.   In any situation like this, between silver, between gray, and so forth.

16

I submit to you when you look at all of these witnesses who came in, [Defense counsel] says they're trying to . . . pull a fast one. You decide.   And I submit to you that they were not.   In here, or that night.   They described to the best of their ability what they saw that night[.]

And like I said, keep in mind what Isaiah Ragland said, he was completely emotional and distraught.   You know, when you arrive, there's a lot of questions at the scene with this responding officer.   I mean you have somebody literally actually truly . . . bleeding to death.   What is this officer supposed to do, wait a minute, I got to fill this form out and check off mustache or not mustache, or this or that in other boxes on a form.

I mean use your common sense when you're examining these things.   And what you ultimately have to do after judging the credibility of what these witnesses said that happened that night, and then looking at the identifications made, is look at the integrity of the identifications.   And you look back and say is the identification ultimately made consistent with what they said that night in material aspects.   And I submit to you that it is.

[Counsel then turns to issues Defense counsel raised as to the police investigation as to Petitioner.]

And so the detective gets phone records, applies for a warrant, gets the warrant, ultimately gets records back.   The phone records in this case are very significant.   I never said, I don't say now, how could we possibly know who's on the other end of the phone.   If I lost my phone tomorrow and somebody's making calls on it, who knows who it is.

But, what is significant, and this goes [to] when you decide [whether Petitioner was] there.   Of course we don't know who is answering the phone of [Petitioner].   We don't know who is making the calls.   But look at these phone records, because you can ascertain from the timing here you have Jason Faubert's phone, the victim's phone, taken in the robbery homicide, the approximate time being shortly before 10 p.m. of the robbery homicide, and then 11 minutes after 10 there's a call from Jason Faubert's phone to this phone number[.]

It turns out we later find out that's [Petitioner's] phone. What do you think happens after a traumatic instance of the people

17

> involved who commit a crime like this?  They split up.  They call
> each other.   That is a logical inference from this.   Is it a
> coincidence that the [stolen phone] is calling [Petitioner]?   Maybe.
> If that was all you had in this case, this is it.   You'd say well, you
> know what, who knows.
>
> [Counsel goes on to explain that the phone evidence didn't stand on
> its own, but explains why the police began investigating Petitioner
> based on the numerous calls between the stolen phone and
> Petitioner.]

(Document 15 attached to ECF No. 6 at 39-46).

Petitioner alleges that counsel should have objected to these statements because they amount to prosecutorial misconduct.   Under New Jersey law, prosecutors "are expected to make vigorous and forceful closing arguments, their primary duty is to see that justice is done. Prosecutors are permitted to respond to arguments raised by defense counsel so long as they do not stray beyond the evidence.   Prosecutorial misconduct will constitute grounds for reversal only where it is so egregious as to deprive defendants of a fair trial."   *State v. Morais*, 819 A.2d 424, 428-29 (N.J. App. Div.) (internal citations omitted), *certif. denied*, 832 A.2d 322 (N.J. 2003).   Under Federal law, prosecutorial misconduct is similarly insufficient to overturn a conviction unless it "so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process."   *Reid v. Beard*, 420 F. App'x 156, 159 (3d Cir. 2011) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).   A prosecutor's comments must therefore always be viewed "in context and in light of the entire trial, assessing the severity of the conduct, the effect of [any] curative instructions, and the quantum of evidence against the [petitioner]."   *Id.* at 159.

Viewing the comments made in this case in context, it is clear that the prosecutor's discussion of the evidence produced at trial was entirely fair comment.   The passages Petitioner

decries were direct responses to the arguments of Petitioner's counsel which suggested that the jury should disregard the eye witnesses based on certain inconsistencies in their statements, and regarding the phone record evidence.   (*See* Document 15 attached to ECF No. 6 at 13-18).   In response to these attacks, the prosecutor reviewed the produced evidence with the jury and discussed that evidence and the reasonable inferences to be drawn therefrom and argued that what inconsistencies there were were natural results of a traumatic experience and were not material to the actual statements the witnesses had given.   Counsel's discussion of the phone records was likewise fair comment on the testimony regarding how Petitioner came to be a suspect in this matter and a fair response to Petitioner's counsel's summation.   Thus, these comments were not prosecutorial misconduct, and counsel could not have been ineffective for failing to challenge them as an objection to these comments would have been without merit. *See Morais*, 19 A.2d at 428-29; *Reid*, 420 F. App'x at 159; *United States v. Aldea*, 450 F. App'x 151, 152 (3d Cir. 2011) ("[c]ounsel cannot be ineffective for failing to raise meritless claims").

**d.   Petitioner's claim that counsel failed to challenge the telephone records**

Petitioner next claims that his trial counsel was ineffective for failing to challenge the admission of his telephone records at trial.   Specifically, Petitioner takes issue with the admission of these records as a business record.   Strongly undermining Petitioner's claim, however, is that counsel immediately objected to the admission of the records, and it was the trial court, erroneously, who determined that the records should be admitted under the business record exception to the hearsay rule.   *See Evans*, 2011 WL 2496243 at *5.   While acknowledging that the trial court had erred in treating the records as a business record in the absence of the

appropriate foundation, the Appellate Division determined that the admission of the records in

this case was harmless beyond a reasonable doubt, and that their admission was insufficient to

warrant a reversal of Petitioner's conviction regardless of whether they would be considered

"testimonial" hearsay sufficient to impugn the Confrontation Clause under *Crawford*. *Id.* at *5-

6; *see also United States v. Jimenez*, 513 F.3d 62, 79-81 (3d Cir. 2008) (the improper admission

of testimonial hearsay not grounds for reversal where the hearsay's admission was harmless

beyond a reasonable doubt).   Nothing in the record suggests that this conclusion was in error.

     The admission of testimonial hearsay in violation of *Crawford* will not provide grounds

for the reversal of a conviction where it is harmless beyond a reasonable doubt.   *Jimenez*, 513

F.3d at 80.   Such evidence is harmless beyond a reasonable doubt where "the error did not

substantially sway or substantially influence" the jury's verdict.   *Id.* (quoting *United States v.

Iskander*, 407 F.3d 232, 240 (4th Cir. 2005)).   Here, the telephone records were admitted only to

show why the police began to treat Petitioner as a person of interest in their investigation

insomuch as one of the stolen cell phones had been used to call Petitioner repeatedly, including

shortly after the robbery.   *See Evans*, 2011 WL 2496243 at *5-6.   As the Appellate Division

noted, those telephone records can clearly be said to have been harmless in this case given the

staggering evidence of Petitioner's guilt produced at trial including not only the testimony of

several eye witnesses all of whom identified Petitioner, but also Petitioner's confession to the

police wherein he admitted his participation in the robbery, if not the murder of which he was

acquitted.   Given the strong evidence of Petitioner's guilt, including Petitioner's admission

thereof to the police, the Appellate Division was entirely correct in determining that the

telephone records "were a drop in the ocean of evidence" which proved Petitioner's guilt.   *Id.* at

*5. Given this ocean of evidence, and the limited purpose for which the records were used – to show why police began to suspect Petitioner, it is clear that the phone records did not substantially sway or influence the jury, and the admission of those records, even assuming they were testimonial hearsay,[3] was clearly harmless beyond a reasonable doubt.   As such, Petitioner was not prejudiced by counsel's failure to more "zealously" object to the admission of the records, and Petitioner has failed to show ineffective assistance of counsel.

**e.  Petitioner's police notes related claim**

Petitioner next asserts that counsel was ineffective in failing to request that the jury be instructed to disregard the testimony of Officer Smith or for dismissal of Petitioner's case because Smith testified at trial that he had destroyed his notes after drafting his final report.   As the Appellate Division explained to Petitioner on direct appeal,

> By 2007, the [New Jersey] Supreme Court had twice noted its disapproval "that police officers engage in the seemingly routine practice of destroying their contemporaneous notes of witness interviews after the preparation of formal reports."   *State v. Branch*, 182 N.J. 338, 367 n. 10 (2005); *State v. Cook*, 179 N.J. 533, 542 n. 3 (2004).   The Court stated this more pointedly three years after this trial, in *State v. P.S.*, 202 N.J. 232, 240 (2010).   Finally, in 2011, the Court explicitly held that police officers may not destroy their notes, such notes must be turned over to the defense in discovery pursuant to [the N.J. Court Rules], and failure to preserve the notes could warrant an adverse inference charge.   *State v. W.B.*, [205 N.J. 588, 608-09 (2011)].   However, in *W.B.*, the Court also specifically provided that its holding would be prospective only.   [*Id.*].

*Evans*, 2011 WL 2496243 at *6.   Thus, at the time of Petitioner's trial, police officers were under no requirement to retain their initial notes in place of final reports.   Indeed, even had *W.B.*

---

[3] A finding this Court need not, and does not make.

been in place, the only thing to which Petitioner would have been entitled was an adverse inference charge permitting the jury to assume that the officer destroyed his notes to strengthen the State's case, and not an order directing the jury to disregard the officer's testimony nor the dismissal of Petitioner's charges.   *Id.*

Even had Petitioner been in theory entitled to an adverse inference charge based on the destruction of the notes, Petitioner would not be able to show that he was prejudiced in this case. Although counsel did not move to dismiss or to have the officer's testimony dismissed, nor did he request an adverse inference charge, counsel not only cross-examined the officer on the issue, but argued at length in his summation regarding the destruction of the notes, specifically arguing that the officer destroyed the notes because they would have contradicted his testimony at trial. (*See* Document 15 attached to ECF No. 6 at 34-36).   Counsel argued forcefully that there was information missing from the officer's testimony and report, and that the officer deliberately destroyed his notes because it would fill in those alleged gaps with information that either ran counter to the officer's testimony or would weaken the State's case.   (*Id.*).   Thus, although no adverse inference charge was given, counsel put the issue directly before the jury and argued that they should use the destruction of the notes as a basis to question or outright reject the officer's testimony.   Thus, Petitioner suffered no prejudice as he effectively received the same benefit he could have gotten from an adverse inference charge – to have the issue of the destruction of the notes put before the jury as a basis for rejecting the officer's testimony and credibility.   Counsel thus used the destruction of the notes as a basis for his argument on Petitioner's behalf in support of both the contention that the officer's coerced Petitioner into giving a false confession through a lengthy interrogation and that the identifications were somewhat suspect.   Thus, it appears,

based on the lack of caselaw to support Petitioner's assertion and counsel's lengthy argument at summation, that counsel was not deficient and Petitioner suffered no prejudice.   Petitioner has thus established neither prong of an ineffective assistance claim, and his claim is thus without merit.

### f.   Petitioner's alibi related claim

Petitioner also asserts that trial counsel was ineffective in failing to "obtain, review, and use [his] phone records to disprove the State's theory" of the case.   (ECF No. 1 at 33). Petitioner, however provides no elaboration as to how these phone records would have provided an alibi.   Considering the only phone records at issue in this case show that Petitioner received phone calls from one of the stolen phones shortly after the robbery, it is difficult to see how the records would support this alleged alibi.   Petitioner, in support of his contention, instead directs this Court to the portion of his initial PCR brief which argued that the phone records should have been held inadmissible under the Confrontation Claus.   (Document 29 attached to ECF No. 6 at 70-74).   This argument provides no support for Petitioner's assertion that there was an undiscovered alibi defense hidden somewhere in the phone records that he argues should never have been admitted in the first place.   Ultimately, Petitioner has provided no more than a bald assertion of ineffective assistance of counsel and has provided no factual matter to support his assertions, and as such has failed to establish his entitlement to relief.   *See Palmer*, 592 F.3d at 395.

### g.   Petitioner's inconsistent verdict and weight of the evidence claim

Petitioner also claims that trial counsel was ineffective in failing to challenge the verdict based on the sufficiency of the evidence or an argument that the verdict was inconsistent.   As to the sufficiency of the verdict, given the strong evidence of Petitioner's guilt including his own confession and the testimony of numerous eye witnesses/victims, it is abundantly clear that no motion challenging the sufficiency of the evidence against Petitioner would have succeeded, *see, e.g., Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (verdict against the weight of evidence only where, viewing the facts in the light most favorable to the State, no reasonable trier of fact could have found the elements of the crimes charged beyond a reasonable doubt), and counsel could not have been ineffective in failing to bring such a meritless argument to the Court's attention. *Aldea*, 450 F. App'x at 152.

Petitioner's claim that counsel should have argued that the verdict was inconsistent fairs no better.   Petitioner argues that his verdict was inconsistent insomuch as he was convicted of armed robbery, which requires the presence of a weapon, but was acquitted of various weapon possession charges.   Petitioner's argument, of course, ignores the fact that the jury likely determined that Petitioner was guilty of armed robbery as an accomplice to his co-conspirator who certainly had a gun since he shot and killed one of the victims, while still finding factually that Petitioner himself had not possessed a firearm sufficient for the jury to conclude that he was guilty of the various weapon offenses.   In any event, inconsistent jury verdicts in and of themselves do not render a conviction unconstitutional.  *See, e.g., United States v. Powell*, 469 U.S. 57, 63 (1984); *State v. Banko*, 861 A.2d 110, 117-18 (N.J. 2004).   Even if, as Petitioner asserts, his conviction for armed robbery were inconsistent with his being found not guilty of the weapon offenses, this would provide no basis for the overturning of his conviction, and a motion

24

on that basis would have been fruitless.   As such, counsel was not ineffective in failing to raise this argument before the trial court.   *Id.*; *Aldea*, 450 F. App'x at 152.


### h.   Petitioner's jury instruction claim

Petitioner next asserts that trial counsel was ineffective in failing to object to the jury instructions.   Specifically, Petitioner asserts that counsel should have objected to the trial court telling the jury that attempted robbery and robbery are "one in the same (sic)."   In making this argument, however, Petitioner points the Court's attention not to the jury charge, but to the trial court's answer to a question as to robbery and attempted robbery raised by the jury after the charge.   (Document 16 attached to ECF No. 6 at 5-15).   In any event, the trial court never told the jury that the two were one and the same.   Indeed, in the very transcript to which Petitioner directs the Court's attention, the trial judge went out of his way to make sure the jury understood the difference between the two offenses.   (*Id.*).   Thus, Petitioner's assertion is utterly without merit, and counsel could not have been ineffective in failing to raise such an objection.   *Aldea*, 450 F. App'x at 152.

**i.  Petitioner's claim of ineffective assistance of appellate counsel**

Petitioner also claims that he received ineffective assistance of appellate counsel.   The *Strickland* standard applies to claims of ineffective assistance of appellate counsel.   *Smith v. Robbins*, 528 U.S. 259, 285 (2000).   "[I]t's a well established principle[, however,] that counsel decides which issues to pursue on appeal," *see Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996), and appellate counsel need not raise every nonfrivolous claim a defendant requests. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).   As a brief that raises every colorable claim runs the risk of "burying good arguments," the centerpiece of effective Appellate advocacy is winnowing out weaker claims in favor of those more likely to provide an appellant with relief.   *Id.* at 753; *see also Smith v. Murray*, 477 U.S. 527, 536 (1986).   Thus, the Supreme Court has held that "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."   *See Robbins*, 528 U.S. at 288 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).   Petitioner specifically asserts that appellate counsel was ineffective in the following ways: in failing to raise the sufficiency of the evidence or inconsistent verdict arguments discussed above, in failing to raise the jury instruction issue discussed above, and in failing to "adequately argue" that the trial court erred in admitting Petitioner's statement to the police.   As to the first two claims, Petitioner's claims are without merit for the reasons discussed above.   Because Petitioner's inconsistent verdict, weight of the evidence, and jury instruction claims are meritless, appellate counsel was not ineffective in failing to raise those claims on appeal.

Petitioner also asserts that counsel should have raised a *Miranda* claim on appeal.   The only basis Petitioner provides for such a claim, however, is that police did not follow proper

"procedure and guidelines" and that the "time frame of the interrogation, 7:30 a.m.-12:20 p.m., was inconsistent with the detective's testimony at trial."   Petitioner provides no further elaboration as to this alleged *Miranda* claim.

Prior to trial, the trial Court held a *Miranda* hearing to determine whether Petitioner's rights had been violated.   At that hearing, the jury heard the testimony of Detective Smith who testified that Petitioner was advised of his *Miranda* rights verbally prior to being interrogated, that Petitioner said he understood his rights, and that Petitioner verbally waived those rights. (Document 6 attached to ECF No. 6 at 17-23).   The detective also testified that Petitioner eventually executed a written waiver of his rights.   (*Id.* at 23).   The detective further testified that, after waiving his rights verbally, he admitted to his involvement in the robbery, and that after waiving his rights in writing he gave a signed statement to the same effect.   (*Id.* at 23-30).

Based on this testimony, supported by documentary proof including the signed waiver and signed statement, this Court cannot conclude that any *Miranda* claim Petitioner wishes had been raised on appeal was clearly stronger than those that appellate counsel did choose to raise. *See Berghuis v. Thompkins*, 560 U.S. 370, 382-83 (2010) (*Miranda* not violated where a defendant knowingly and voluntarily waives his rights prior to making a statement).   Indeed, it appears that the admission of Petitioner's statement was entirely proper given the waiver of Petitioner's rights and Petitioner's giving both an oral and written statement after that waiver. *Id.*   Petitioner's vague assertions of inconsistent trial testimony, without elaboration, are patently insufficient to suggest otherwise.   As such, Petitioner has failed to show that he suffered ineffective assistance of appellate counsel.   *See Robbins*, 528 U.S. at 288.

**j.  Petitioner's cumulative error claim**

In his final claim, Petitioner asserts that this Court should consider the totality of the errors at trial to determine whether Petitioner suffered ineffective assistance of counsel. Petitioner, however, has failed to show that counsel was ineffective in any of his claims, and has not shown that the trial court otherwise committed reversible error.   Viewing his claims in the aggregate does not improve Petitioner's claims.   Petitioner has failed to show that he suffered any prejudice from counsel's actions, and as such cannot establish ineffective assistance.   As such, Petitioner's claim that counsel's "failures" in the aggregate present a case of ineffective assistance of counsel is without merit.

**III.   CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right."   "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further."   *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because Petitioner's habeas claims are without merit, he has failed to make a substantial showing of a denial of a constitutional right. Likewise, because jurists of reason could not disagree with this Court's conclusion that Petitioner's claims are without merit, the petition is not adequate to receive encouragement to proceed further.   This Court shall therefore deny Petitioner a certificate of appealability.

**IV. CONCLUSION**

For the reasons stated above, Petitioner's petition for a writ of habeas corpus is DENIED

and Petitioner is DENIED a certificate of appealability.   An appropriate order follows.


Dated: June 6, 2016                                      _**s/ Susan D. Wigenton**_____
                                                         Hon. Susan D. Wigenton,
                                                         United States District Judge

29